

**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FILED**

**JUN - 2 2010**

**CLERK, U.S. DISTRICT COURT**
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| BILLY FEDDERSEN, | § |
| PLAINTIFF, | § |
| | § |
| v. | § CIVIL ACTION NO. 4:08-CV-752-Y |
| | § |
| MICHAEL J. ASTRUE, | § |
| COMMISSIONER OF SOCIAL SECURITY, | § |
| DEFENDANT. | § |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

A.      Statement of the Case

Plaintiff Billy Feddersen filed this action pursuant to Sections 405(g) and 1383(c)(3) of

Title 42 of the United States Code for judicial review of a final decision of the Commissioner of

Social Security denying his claims for disability insurance benefits under Title II and

supplemental security income ("SSI") benefits under Title XVI of the Social Security Act

1

("SSA").  In April 2006, Feddersen applied for disability insurance[1] and SSI benefits alleging

that he had become disabled on April 30, 2001.[2]  (Transcript ("Tr.") 11, 34, 106-13.)

His applications were denied initially and on reconsideration.  (Tr. 11, 58-64, 71-77; *see*

Tr. 65-66, 79-80.)  The ALJ held a hearing on March 13, 2008 (Tr. 32-52; *see* Tr. 86-90, 103)

and issued a decision on May 29, 2008 that Feddersen was not disabled because he was capable

of performing work that existed in the national economy (Tr. 11-24).  Feddersen filed a written

request for review, and the Appeals Council denied Feddersen's request for review, leaving the

ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 3-6.)

B.    Standard of Review

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are

governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory

provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (disability

insurance); 20 C.F.R. Pt. 416 (SSI).  Although technically governed by different statutes and

regulations, "[t]he law and regulations governing the determination of disability are the same for

both disability insurance benefits and SSI."  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.

1994).

The SSA defines a disability as a medically determinable physical or mental impairment

lasting at least twelve months that prevents the claimant from engaging in substantial gainful

---

[1]June 30, 2006 is the date Feddersen was last insured for purposes of his disability insurance benefits claims.  (Tr. 34.)

[2]Feddersen filed prior applications for disability insurance and SSI benefits in August 2001, which were previously denied.  (Tr. 11.)  The Administrative Law Judge ("ALJ") construed Feddersen's alleged onset date of April 30, 2001 as a request to reopen and reconsider the decisions in the prior applications.  (*Id.*)  The ALJ declined to do so, stating that Feddersen had failed to meet the requirements necessary to reopen such prior applications.  (Tr. 11-12.)  Because the prior applications were not reopened, the ALJ noted that the relevant onset date was May 15, 2003, the day after the prior applications were dismissed.  (Tr. 12; *see* Tr. 33-34.)

activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence

in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

C.   Issues

1. Whether the ALJ applied the correct legal standard in weighing the treating source opinion.

2. Whether the ALJ's finding that Feddersen could maintain employment for an indefinite period of time is supported by substantial evidence.

D.   Administrative Record

1.   Relevant Treatment History[3]

Feddersen was treated at the Pikes Peak Mental Health Center in 1996 and 1999 for issues relating to his depression. (Tr. 513-27.) During this period, Feddersen reported that he was experiencing depression, anxiety, sleeplessness, and suicidal thoughts and that he was abusing alcohol and marijuana. (*See, e.g.*, Tr. 513, 516, 521, 524.) He was diagnosed with a

---

[3]Because Feddersen's arguments in his brief relate solely to issues relating to his mental impairments, the Court will review only the medical evidence relating to such impairments.

variety of ailments, including depression, bipolar II disorder, cannabis use, avoidant personality disorder, and multiple psychological, social, and environmental problems, and his Global Assessment of Functioning ("GAF")[4] was rated at 60[5] during this time period. (Tr. 514, 522, 626.)

In August 2001, Feddersen was admitted to Trinity Springs Pavilion hospital under an order of protective custody because he had attempted suicide by overdosing on Zoloft and Librium. (Tr. 177-79.) James Witschy, M.D., diagnosed Feddersen with depression, alcohol dependence and social anxiety disorder and rated his GAF score at 30[6] at the time of his admission. (Tr. 177.) At the time of Feddersen's discharge, Witschy stated that Feddersen was only minimally depressed and had a GAF score of 65-70.[7] (Tr. 178.)

Feddersen received treatment through the John Peter Smith Network ("JPS") from 2001-2002 for depression and bipolar disorder. (Tr. 201-14, 235-41, 248-60; *see also* Tr. 361-66.) During this time, he reported that he was homeless and had an alcohol dependency. (*See, e.g.,* Tr. 248-60.) His symptoms ranged from feeling better and not depressed to experiencing moderate depression, decreased energy and increased irritability, anger and guilt. (*See, e.g.,* Tr.

---

[4]A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) (DSM-IV).

[5]A GAF score of 51 to 60 reflects moderate symptoms or moderate difficulty in social, occupational, or school functioning. DSM-IV at 34.

[6]A GAF score of 21 to 30 indicates behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. DSM-IV at 34.

[7]A GAF score of 61 to 70 reflects some mild symptoms or some difficulty in social, occupational, or school functioning. DSM-IV at 34.

201, 205, 210, 248-60.)  In February 2002, he reported that he was feeling delusional since he was not taking any antidepressants and was continuing to "binge" on alcohol. (Tr. 203.)

In December 2003, Feddersen went to the JPS Psychiatric Emergency Center to obtain medication because he had been off his medications for eight to nine months. (Tr. 242.)  A mental status examination indicated he was moderately depressed. (*Id.*)  In 2005, Feddersen was treated at JPS for anxiety, depression, and alcohol dependence. (Tr. 199-200, 230-31.)  During this time period, he experienced a variety of symptoms ranging from mild agitation and poor judgment (Tr. 199-200) to moderate irritability, agitation, and anxiety (Tr. 230).

In a Daily Activity Questionnaire related to his mental impairments, dated May 2, 2006, Feddersen reported that he had always been shy, quiet, and nervous, and had been picked on all his life by other people (Tr. 144; *see* Tr. 144-48.)  He indicated that in an average day he would cook, clean, do laundry, and take care of his mother. (Tr. 145-46.)  He reported that he often had to lie down because of his pain and depression. (Tr. 145.)

On May 29, 2006, Feddersen underwent a consultative psychological evaluation with Christopher Anagnostis, Ph.D., (Tr. 289-94.)  Feddersen reported to Anagnostis that he felt sad, tired, and helpless, had trouble sleeping, and tried to stay away from other people because they called him names. (Tr. 290.)  Feddersen also stated that he had tried to commit suicide several times previously, with the last attempt being in 2001, and that he not been attending regular visits with a psychiatrist since 2003. (*Id.*)  Feddersen described a difficult childhood in which his father had physically abused him until he was 14, and he stated that he currently lived with and cared for his ill, elderly mother. (Tr. 291.)  Anagnostis noted that Feddersen appeared to be generally truthful on most topics during the examination, but that "he did appear to present his

symptoms in a somewhat dramatic, and, at times, inaccurate manner." (Tr. 289.) Anagnostis

opined that Feddersen's "current symptoms presentation is somewhat complicated by his current

and past alcohol abuse." (*Id.*) Anagnostis diagnosed Feddersen with several ailments, including

recurrent, moderate major depressive disorder, alcohol dependence, paranoid personality

disorder, and occupation and social problems and rated his GAF score at 58. (Tr. 294.)   He

further stated that Feddersen's prognosis was fair if he began receiving treatment from a

counselor or psychiatrist, although "his personality traits may remain a difficulty for him." (Tr.

294.)

In a Psychiatric Review Technique Form ("PRTF") dated June 22, 2006, Richard

Alexander, M.D., a State Agency physician, indicated that Feddersen suffered from a depressive

syndrome, characterized by decreased energy, feelings of guilt or worthlessness, and

hallucinations, delusions or paranoid thinking. (Tr. 304; *see* Tr. 304-13.) Alexander's complete

assessment reflected findings that Feddersen's mental impairment did not meet the complete

criteria of Section 12.04, 12.08 or 12.09.[8] (Tr. 304, 311-12.) Alexander opined that Feddersen

was mildly limited in his activities of daily living and moderately limited in maintaining social

functioning and concentration, persistence, or pace. (Tr. 311.)

In a Mental Residual Functional Capacity Assessment ("MRFC") dated the same day,

Alexander found that Feddersen was moderately limited in his ability to understand, remember,

and carry out detailed instructions, maintain attention and concentration for extended periods,

---

[8]Specifically, Alexander indicated that Feddersen suffered from a recurrent, moderate major depressive disorder that did not precisely satisfy the diagnostic criteria of Section 12.04 of the Listing. (Tr. 304.) He also found that Feddersen suffered from a personality disorder under Section 12.08 of the Listing that was evidenced by pathologically inappropriate suspiciousness or hostility and a substance abuse disorder under Section 12.09 of the Listing. (Tr. 308-09.)

work in coordination with or proximity to others without being distracted by them, complete a

normal workday and workweek without interruptions from psychologically based symptoms and

perform at a consistent pace without an unreasonable number and length of rest periods, accept

instructions and respond appropriately to criticism from supervisors, get along with coworkers or

peers without distracting them or exhibiting behavioral extremes, respond appropriately to

changes in the work setting, travel in unfamiliar places or use public transportation, and set

realistic goals or make plans independently of others.   (Tr. 315-18.)   Alexander noted that

Feddersen's symptoms and functional limitations were only partially supported by the medical

record and other evidence. (Tr. 317.)

A Disability Determination and Transmittal ("DDT") Form, dated June 27, 2006 and

signed by Jimmy Breazeale, M.D., indicated that Feddersen was diagnosed with, *inter alia*,

major depressive disorder and was not disabled. (Tr. 54-55.) A DDT Form, dated October 18,

2006 and signed by Randal Reid, M.D., reached the same conclusions. (Tr. 56-57.)

From August 2006 to February 2008, Feddersen received treatment at the Mental Health

Mental Retardation Center ("MHMR"). (Tr. 394-411, 422-51, 453-511, 596-631.) During this

time, he was often seen and treated by Olusegun Solano, M.D ("Solano"). (*Id.*) In August 2006,

Feddersen was diagnosed with recurrent, major depressive disorder and alcohol abuse, and he

stated that he felt depressed, hopeless, and occasionally had suicidal thoughts. (Tr. 394, 398.) In

September 2006, Solano also diagnosed Feddersen with bipolar disorder.   (Tr. 440-43.)

Feddersen reported that he was drinking six or more beers at least four days a week.  (Tr. 448.)

In mid-September, Solano noted that Feddersen continued to be depressed and rated his overall

8

functioning at 4 (on a scale of 0 to 10), his depression at 7 (on a scale of 0 to 10 with 5 being moderate and 10 being extreme), and his GAF at 45.[9]   (Tr. 435-36.)

In late October 2006, Feddersen reported to Solano that the addition of Lithium to his medication regimen had decreased his mood swings and depression and he was sleeping better. (Tr. 426; *see* Tr. 489.)   Feddersen's overall functioning was rated at 8, his depression was rated at 3, and his GAF was rated at 50.   (Tr. 426, 429.)

In December 2006, Feddersen reported to the MHMR that he was "doing ok mentally" but was anxious due to his mother's hospitalization.   (Tr. 422.)   His depression was rated at 3, his overall functioning was rated at 4-5, and his GAF was rated at 50.   (Tr. 422.-23.)   Feddersen stated that he had a drink three weeks ago but wanted to remain alcohol free.   (Tr. 423.)

On December 13, 2006, Solano completed a Mental Impairment Questionnaire for Major Depressive & Bipolar Disorder in which he indicated that he had seen Feddersen every four weeks for 20 to 30 minutes per session beginning in September 2006.   (Tr. 414; *see* Tr. 414-20, 506-11.)   Solano diagnosed Feddersen with several impairments, including bipolar disorder and avoidant personality disorder, and rated his GAF at 50.   (Tr. 414, 506.)   Solano noted that Feddersen had made moderate improvement but continue to have anxiety, social withdrawal and a poor self image.   (*Id.*)   Solano opined that Feddersen had marked difficulties in maintaining social functioning, concentration, persistence, or pace.   (Tr. 416, 508.)   Solano further indicated that Feddersen had a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to

---

[9]A GAF score of 41 to 50 reflects serious symptoms or any serious impairment in social, occupational, or school functioning. DSM-IV at 34.

cause the individual to decompensate." (*Id.*) He also opined that Feddersen would be unable to meet competitive standards in the following areas: (1) maintain attention for two hour segment, (2) sustain an ordinary routine without special supervision, (3) work in coordination with or proximity to others without being unduly distracted, (4) complete a normal workday and workweek without interruptions from psychologically based symptoms, (5) accept instructions and respond appropriately to criticism from supervisors, (6) respond appropriately to changes in a routine work setting, (7) deal with normal work stress, (8) understand, remember, and carry out detailed instructions, (9) deal with stress of semiskilled and skilled work, and (10) interact appropriately with the general public. (Tr. 417-18, 509-10.)  Solano further indicated that Feddersen used drugs or alcohol, which was a contributing factor in his impairment, but that Feddersen would continue to have this impairment and be unable to work even if he stopped abusing drugs or alcohol. (Tr. 419, 511.)

In January 2007, Feddersen reported to Solano that he was doing a little better and felt less depressed. (Tr. 475.)  Solano rated his overall functioning at 5 and his GAF score at 50. (Tr. 475-76.)  In April and May 2007, Feddersen reported that he had not been doing very well lately. (Tr. 463, 470.)  He was worried about his own health and the health of his mother, and he stated that he was the "talk of the town" in Lake Worth because people had found out he had applied for "mental disability." (Tr. 464, 470.)  His overall functioning and GAF continued to be rated at 5 and 50, respectively. (Tr. 464, 470-71.)

Feddersen reported to Solano in September 2007 that he was doing "fairly well except on occasions when he thinks about his financial problems." (Tr. 622.)  Feddersen's overall functioning and GAF scores remained unchanged. (Tr. 622-23.)  In January 2008, Solano's

10

treatment notes from MHMR indicated that Feddersen was experiencing increased anxiety as a result of financial problems.  (Tr. 600.)   Solano rated Feddersen's overall functioning at a 5 and his GAF score at 50.  (Tr. 600-01.)

On February 8, 2008, Solano completed another questionnaire in which he opined that Feddersen had marked difficulties in maintaining social functioning, concentration, persistence, or pace.[10]  (Tr. 592; *see* Tr. 592-595.)  Solano further indicated that Feddersen had a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate."  (Tr. 592.)  He stated that Feddersen would be unable to meet competitive standards in the following areas: (1) maintain attention for two hour segment, (2) work in coordination with or proximity to others without being unduly distracted, (3) complete a normal workday and workweek without interruptions from psychologically based symptoms, (4) accept instructions and respond appropriately to criticism from supervisors, (5) respond appropriately to changes in a routine work setting, (6) deal with normal work stress, (7) understand, remember, and carry out detailed instructions, (8) deal with stress of semiskilled and skilled work, and (9) interact appropriately with the general public.  (Tr. 593-94.)   Solano also indicated that Feddersen did not use drugs or alcohol at that time but that he had a history of alcohol use until 1996.  (Tr. 595.)   Solano stated that, although drug addiction and alcoholism was not a contributing factor in Feddersen's impairment, Feddersen would continue to have this impairment and be unable to work even if he were not abusing drugs or alcohol.  (Tr. 595.)

---

[10]The Court notes that the first page of the questionnaire appears to be missing from the record.  (Tr. 592-95.)

2. Administrative Hearing

Feddersen was born on June 17, 1960, and he completed the 11th grade. (Tr. 14, 36-37.) At the hearing before the ALJ, Feddersen testified that he lived in an apartment with his mother so that he could help take care of her. (Tr. 36-37.) He stated that he was unable to work because he had problems with anxiety, stress, and depression. (Tr. 38.) He further testified that on an average day he washed the dishes, cooked occasionally, and helped his mother by picking up her medicine and taking her to the doctor. (Tr. 39-40.) He stated that on some days he was too nervous to drive and that he had good days and bad days. (Tr. 39-41.) He testified that on the bad days, which he had approximately two to three days a week, he would stay in bed most of the day and sometimes felt suicidal and depressed. (Id.) He also stated that he quit drinking alcohol in November 2006 and was not using any "street drugs." (Tr. 41.) He reported that he had attempted suicide several times, sometimes had anxiety attacks and crying spells, and had manic and depression episodes. (Tr. 43-44.) He further testified that he was shy and quiet and had been picked on by people, including former co-workers and supervisors, all of his life. (Tr. 44-45.)

3. ALJ Decision

The ALJ, in his May 29, 2008 decision, found that Feddersen had not engaged in any substantial gainful activity at any time relevant to his decision. (Tr. 13.) He further found that Feddersen had the severe impairments of gastroesophageal reflux disease, early osteoarthritis of the knees and hips, degenerative joint disease of the left shoulder, impairment status-post cancer of the bladder, impairment status-post chemotherapy, a history of benign colon polyps, major depression, a bipolar disorder, an anxiety disorder, an avoidant personality disorder, and alcohol

12

dependence. (Tr. 13.) He held that none of Feddersen's impairments, however, met or equaled

the severity of any impairment in the Listing. (Tr. 13.) As to Feddersen's Residual Functional

Capacity ("RFC"), the ALJ stated:

> Mr. Feddersen retains the following residual functional capacity: The full range of light work (lift and carry 20 pounds occasionally and 10 pounds frequently); stand and walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and frequently climb, balance, kneel, crouch, crawl, or stoop. He has no manipulative, visual/communicative, or environmental limitations. He can understand, remember, and carry out short, simple instructions in a simple and routine work environment. He can have only incidental contact with the public and only occasional contact with coworkers. He can respond appropriately to usual work pressures and changes in the work setting. Mr. Feddersen can work full-time at this residual functional capacity on a sustained basis and maintain employment for an indefinite period of time. (*See Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), and *Singletary v. Bowen*, 798 F.2d 818 (5th cir. 1986).

(Tr. 14.) In support of this RFC assessment, the ALJ went through an analysis of the evidence in

the record. (Tr. 14-24.) As relevant here, he opined:

> Mr. Feddersen has underlying medically determinable impairments that reasonably could be expected to cause the type of symptoms alleged. His testimony and allegations concerning the extent of his pain and functional limitations are generally credible, but not to the full extent alleged. Some of his allegations have been inconsistent and not reasonably supported by the objective medical evidence and other evidence. The intensity and persistence of his symptoms has not been consistent with the medical record signs and laboratory findings and with the medical record as a whole. The medical evidence does not support disability. I considered Mr. Feddersen's poor work history, activities of daily living, treatment, medication side effects, and observations of third parties in making this determination.

> Mr. Feddersen's testimony indicates he quit working primarily because of perceived verbal abuse from his boss, and to take care of his mother, not because of his alleged pain and mental limitations. . . . The evidence also does not indicate he has reported having significant fatigue to his treating physicians. Mr. Feddersen takes care of his disabled, elderly mother and is able to do cooking, some cleaning, driving, washing dishes, and other household chores. He has a long history of depression, anxiety, and alcohol dependence, but the treatment

records indicate his mental impairments have been stable with treatment. The MHMR records often indicate his symptoms have been rated as mild to moderate and his functioning has been rated as moderate. Although Mr. Feddersen testified that he has attempted suicide on several occasions, the evidence indicates his last suicide attempt was in 2001. He has not attempted suicide or reported having suicidal ideation at any relevant time addressed by this decision.

. . . .

I note that the MHMR treatment records indicate Mr. Feddersen continued to be rated with global assessments of functioning of 45-50, indicating he had serious symptoms, or any serious impairment in social, occupational, or school functioning. I also note that in December 2006 and February 2008, Dr. Olusegun Solano, Mr. Feddersen's treating physician at MHMR, filled out mental impairment questionnaires and essentially opined Mr. Feddersen was disabled and unable to work. In these questionnaires, Dr. Solano indicated the following: He saw Mr. Feddersen every 4 weeks for 20-30 minutes since September 8, 2006. Mr. Feddersen had a bipolar disorder type II and an avoidant personality disorder. His global assessment of functioning was 50. Mr. Feddersen had moderate improvement with decreased mood swings and decreased depression, but he continued to have anxiety, social withdrawal, and a poor self image. Medication side effects included tremors of the hands with Lithium and drowsiness with Seroquel, which was taken at night. Mr. Feddersen had depressed mood, anxiety, labile affect, anhedonia, social withdrawal, and poor self esteem. His prognosis was guarded. Mr. Feddersen had mild restrictions to his activities of daily living; marked difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence, or pace. No ratings were given regarding episodes of decompensation. Mr. Feddersen had a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change would cause him to decompensate. He was unable to meet competitive standards in maintaining attention for a 2-hour segment; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being distracted; completing a normal workday and workweek without interruptions from psychiatrically based symptoms; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in the work setting; dealing with normal work stress; understanding, remembering, and carrying out detailed instructions; and dealing with stress of semi-skilled and skilled work. He was rated as seriously limited but not precluded in all other areas. In December 2006, Dr. Solano indicated Mr. Feddersen had a drug or alcohol problem, which was a contributing factor to his impairment, but his impairment would continue if he stopped using drugs or alcohol. Mr. Feddersen was unable to work independent of any drug or alcohol

14

use. In February 2008, Dr. Solano indicated Mr. Feddersen had no drug or alcohol use at this time. Mr. Feddersen's alcohol use ended in 1996. . . .

The medical opinions of a claimant's treating physician are ordinarily entitled to considerable weight in the disability determination process, and must be evaluated under the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d), which include the length, nature, and extent of the treatment relationship, the frequency of the examinations, the supportability by other evidence given by the medical source such as medical signs and laboratory findings, the extent of his examination, and the consistency with the record as a whole. More weight is to be assigned to the opinions of a specialist (*See Newton v. Apfel*, 209 F.2d 448 (5th Cir. 2000)). . . . However, treating physician opinions are not conclusive and may be rejected or given little weight when good cause is shown, such as when they are conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or otherwise unsupported by the evidence; the final determination regarding disability is vested in the Commissioner (*Meyers v. Apfel*, 238 F.3d 617 (5th Cir. 2001), and *Greenspan v. Shalala*, 38 F.3d 232 (5th Cir. 1994)). Moreover, the Fifth Circuit has held that a physician's opinion that a claimant is "disabled" or "unable to work" is a legal determination or conclusion reserved to the Commissioner, and therefore is not entitled to special significance. Adjudicators are required to apply the 20 C.F.R. §§ 404.1527(d) and 416.927(d) factors only with respect to medical opinions, not to conclusions reserved to the Commissioner (*Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003). . . .

I do not give controlling weight to Dr. Solano's opinions, or to the MHMR global assessments of functioning scores, because they are inconsistent with the medical records, including the MHMR treatment notes, examination findings, and ratings of Mr. Feddersen's symptoms and functioning, and the records of the other treating and examining physicians. Dr. Solano's statement that Mr. Feddersen's alcohol use ended in 1996 is obviously incorrect. The MHMR treatment notes indicate Mr. Feddersen said he drank alcohol as recently as December 2006.

. . . .

The MHMR treatment notes, mental status examination findings, and the ratings of Mr. Feddersen's mental symptoms and functioning do not support the limitations indicated by Dr. Solano's questionnaires or the global assessment of functioning scores. They show Mr. Feddersen's symptoms and functional limitations were mild to moderate.

(Tr. 15, 21-24.)

15

Based on the RFC assessment, the ALJ opined that Feddersen was not able to perform his past relevant work but there were a significant number of jobs that existed in the national economy Feddersen could perform. (Tr. 24-25.) Consequently, the ALJ found Feddersen was not disabled. (Tr. 26.)

E.     Discussion

    1.  Opinion of Treating Physician

Feddersen claims that the ALJ erred when he failed to give controlling weight to the opinion of Solano, Feddersen's treating psychiatrist, without applying the required factors in 20 C.F.R. § 404.1527(d) as required by *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). (Pl.'s Br. at 7-10.) The defendant, on the other hand, argues, in essence, that the ALJ properly declined to give controlling weight to Solano's opinion because such opinion was contradictory and unsupported by Solano's own treatment notes. (Def.'s Br. at 4-.7) The defendant claims that the ALJ properly rejected the opinion of Solano, choosing instead to rely on the contradictory opinions of other doctors, MHMR treatment records, mental status examination findings, and the ratings of Feddersen's mental symptoms. (Def.'s Br. at 6-7.)

Controlling weight is assigned to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or

16

otherwise supported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). *See also* 20 C.F.R. § 404.1527(e). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton*, the Fifth Circuit Court of Appeals held that absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d). *Newton*, 209 F.3d at 453 (emphasis in original). Under the statutory analysis of 20 C.F.R. § 404.1527(d), the ALJ must evaluate: (1) examining relationship, (2) treatment relationship, including the length, nature and extent of the treatment relationship, as well as the frequency of the examination(s), (3) supportability, (4) consistency, (5) specialization, and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d); *see also* SOCIAL SECURITY RULING ("SSR") 96-2p, 1996 WL 374188, at *2-4 (SSA July 2, 1996); 20 C.F.R. § 416.927(d).[11] *Newton* requires only that the ALJ "consider"

---

[11] Pursuant to *Newton*, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(d) *only* if there is no other reliable medical evidence from another *treating or examining* physician that *controverts* the treating specialist. *See Newton v. Apfel*, 209 F.3d 448, 455-57 (5th Cir. 2000). An ALJ does *not* have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another" as well as cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507-11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant."). Because the Court concludes, *infra*, that the ALJ did perform a detailed analysis of Solano's opinion under the factors set forth in 20 C.F.R. § 404.1527(d), it is not necessary to determine whether there was other reliable medical evidence from another treating or examining physician that controverts Solano's opinion.

each of the factors set forth in section 404.1527(d) and articulate good reasons for its decision to accept or reject the treating physician's opinion. "The [ALJ] need not recite each factor as a litany in every case." *Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008); *accord Burk v. Astrue*, No. 3:07-CV-899-B, 2008 WL 4899232, at *4 n.1 (N.D. Tex. Nov. 12, 2008).

In this case, the ALJ analyzed Solano's opinions, including the mental impairment questionnaires that Solano completed in December 2006 and February 2008. (Tr. 21.) Although Solano did not make an explicit finding as to each of the factors in 20 C.F.R. § 404.1527(d), his discussion of Solano's opinions shows that he considered each factor in reaching his decision to reject Solano's opinions. In his analysis, the ALJ acknowledged that Solano was Feddersen's treating physician and noted Solano's statements in the December 2006 questionnaire that Solano had seen Feddersen every four weeks for 20 to 30 minutes since September 8, 2006. (*Id.*) These statements show that the ALJ evaluated the examining relationship and treatment relationship between Solano and Feddersen, which are the first two factors under section 404.1527(d). *See also* 20 C.F.R. § 416.927(d).

Before rejecting Solano's opinions, the ALJ first recognized that he had a duty to give a treating physician's opinion considerable weight and evaluate such opinion under the factors set forth in section 404.1527(d) and 416.927(d). (Tr. 22.) The ALJ then stated:

> I do not give controlling weight to Dr. Solano's opinions, or to the MHMR global assessments of functioning scores, because they are inconsistent with the medical records, including the MHMR treatment notes, examination findings, and ratings of Mr. Feddersen's symptoms and functioning, and the records of the other treating and examining physicians. Dr. Solano's statement that Mr. Feddersen's

alcohol use ended in 1996 is obviously incorrect. The MHMR treatment notes indicate Mr. Feddersen said he drank alcohol as recently as December 2006.

. . . .

The MHMR treatment notes, mental status examination findings, and the ratings of Mr. Feddersen's mental symptoms and functioning do not support the limitations indicated by Dr. Solano's questionnaires or the global assessment of functioning scores. They show Mr. Feddersen's symptoms and functional limitations were mild to moderate.

(Tr. 22-23.) These statements demonstrate that the ALJ rejected Solano's opinions because they were unsupported and inconsistent with the other medical records on record. The ALJ, thus, evaluated the supportability, consistency, and other factors contradicting Solano's opinions, which are factors three, four, and six of section 404.1527(d). The fifth factor, specialization of the treating physician, is not applicable to this case because neither party alleged that Solano was a specialist. *See Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825, at *3 (N.D. Tex. Apr. 23, 2010).

Because the ALJ considered each of the factors set forth in 20 C.F.R. § 404.1527(d) in analyzing Solano's opinions and articulated valid reasons for rejecting his opinions, which were supported by substantial evidence in the record, the Court concludes that the ALJ did not apply the wrong legal standard in evaluating Solano's opinion. Thus, remand is not required.

2. Maintaining Employment

The next issue is whether the ALJ's finding that Feddersen could maintain employment for an indefinite period of time is supported by substantial evidence. Feddersen argues that "Feddersen's treatment records, when examined as a whole, make it questionable that he could maintain employment for an extended period." (Pl.'s Br. at 11.) In support of his argument,

19

Feddersen relies on the United States Court of Appeals for the Fifth Circuit's holding in *Singletary v. Bowen*, F.2d 818, 822 (5th Cir. 1986) in which the Court held that an ALJ must, in certain situations, make a finding regarding the claimant's ability to maintain a job and such finding should be supported by substantial evidence. *See also Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), *Frank*, 326 F.3d at 621.  (Pl.'s Br. at 10.)

In this case, after determining Feddersen's RFC, the ALJ, citing to *Watson and Singletary, supra*, found that "Feddersen can work full-time at this residual functional capacity on a sustained basis and maintain employment for an indefinite period of time."  After reaching this conclusion, the ALJ examined the evidence in the record, specifically noting the following: (1) Feddersen's testimony and allegations regarding his pain and functional limitations were generally credible but not to the full extent alleged (Tr. 15); (2) Feddersen took care of his disabled, elderly mother and was able to do some cooking, cleaning, driving, washing dishes, and other household chores (*Id.*); (3) MHMR records often indicated his symptoms had been rated as mild to moderate and his functioning had been rated as moderate (*Id.*); and (4) the MHMR treatment records, mental status examination findings, and ratings of Feddersen's mental symptoms and functioning do not support the limitations indicated by Solano (Tr. 24).  Because Feddersen has not demonstrated that the assessment of his RFC is unsupported by substantial evidence or that the ALJ misapplied or failed to apply the appropriate legal standards in assessing his RFC, remand is not required.  Consequently, the Commissioner's decision should be affirmed.

## II. RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONAND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The Court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until June 23, 2010. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

### IV. ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until June 23, 2010 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June 2, 2010.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

22